UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Southern New Jersey Rail Group, LLC, a Delaware limited liability corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 06 CV-04946-LAK (AJP) ) ) |
| Lumbermens Mutual Casualty Company, d/b/a Kemper Insurance Companies, an Illinois corporation | ) ) ) |
| Defendant. | ) ) ) |
| and | ) ) |
| New Jersey Transit Corporation, | ) ) |
| Plaintiff-Intervenor, | ) ) ) |
| v. | ) ) |
| Lumbermens Mutual Casualty Company, d/b/a Kemper Insurance Companies, an Illinois corporation Illinois corporation, | ) ) ) ) |
| Defendant. | ) ) |

---

**LUMBERMENS' REPLY MEMORANDUM IN SUPPORT OF
ITS MOTIONS FOR SUMMARY JUDGMENT AND IN
RESPONSE TO RAIL GROUP'S OPPOSITION THERETO**

# TABLE OF CONTENTS

I.  ARGUMENT .................................................................................................................. 1

    A.  Lumbermens Conformed to This Court's Rules on Page Limits ........................... 1

    B.  Rail Group's Purported Material "Facts" in Dispute do not Raise a Legitimate Trial Issue ................................................................................................................ 2

    C.  Rail Group Cannot Refute that the Counterclaims Were Reported Outside the Policy Period and Were Untimely as a Matter of Law ......................................... 6

    D.  Rail Group Failed to Refute that the Policy Extension Was Procured by a Material Misrepresentation ................................................................................................. 7

        1.  It is Indisputable that the Insureds Misrepresented That There Were No Claims or Circumstances that Could Lead to a Claim Under the Policy ... 7

        2.  The Misrepresentation Was Material Because Lumbermens Relied on the Information in Issuing the Policy Extension ............................................... 9

        3.  The Severability Provision Does Not Vitiate Coverage For Rail Group ... 9

II. CONCLUSION ............................................................................................................ 10

NOW COMES Defendant, Lumbermens Mutual Casualty Company ("Lumbermens"), by and through its attorneys, Duane Morris, LLP, who hereby submits its Reply Memorandum in support of its Motions for Summary Judgment and in response to Plaintiff, Southern New Jersey Rail Group's ("Rail Group"), Opposition thereto.

## I. ARGUMENT[1]

### A. Lumbermens Conformed to This Court's Rules on Page Limits

Lumbermens did not violate Magistrate Judge Andrew J. Peck's Individual Practice Rules limiting supporting motion papers to twenty-five pages. Nothing in the rules suggests that a party is limited to one memorandum supporting different motions simply because it chose to file the motions at the same time. Lumbermens moved for summary judgment on distinct legal theories that rely on entirely separate Policy provisions and discrete points of law and fact. Accordingly, Lumbermens filed two memoranda of law to support the two independent motions.

None of the cases cited by Rail Group support its position and all are easily distinguishable from the current matter.[2] In sum, Lumbermens filed separate memoranda in support of separate and discrete motions for summary judgment, each of which stand on its own merits and rely on separate Policy terms and a discrete set of facts. Rail Group's request to strike Lumbermens' memoranda is therefore without merit.

---

[1] Lumbermens incorporates by reference its Memorandum in Opposition to Rail Group's Motion for Partial Summary Judgment, which addressed many of the same issues discussed herein.

[2] *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004) (movant attempted to evade page limitations by including legal arguments in an affidavit that accompanied a memorandum of law, all in support of the same motion: the court concluded that all legal arguments relating to the one motion should be included in the memorandum of law); *Forsythe v. Board of Education of Unified School District No. 489*, 956 F.Supp. 927 (928-29 (D. Kansas) (involved one motion where the party attempted to add legal arguments in a supplemental brief); *Carter v. The Goodman Group*, No. 92 Civ. 2284 (S.D.N.Y. 1993) (unpublished decision involved a single motion for summary judgment). *Novartis Consumer Health Inc. v. Elan Transdermal Techs, Inc.*, 209 F.R.D. 507 (S.D. Fla. 2002) (involved Local Rules of the United States District Court for the Southern District of Florida that are substantially dissimilar from Judge Peck's rules).

B.  **Rail Group's Purported Material "Facts" in Dispute do not Raise a Legitimate Trial Issue**

Rail Group lists eight "material facts" that it purports are still in dispute.[3] As shown below, each of these purportedly disputed facts are either not material, not in dispute, or is in reality an issue that is ripe for resolution by this Court on summary judgment.

   1. "Whether NJT knew at the time of the renewal of the Policy in September 2002 that it had Counterclaims to assert against Rail Group, although those counterclaims were not asserted until March 2003."

It is irrelevant that NJT did not assert its counterclaims until March 2003. The August 5, 2002 Memorandum, July 2002 Project Briefing and July 30, 2002 Project Briefing Follow-up Information unquestionably establish that NJT would not grant Rail Group's request for over $100 million in change orders at least in part because of Rail Group's professional errors and omissions. Rail Group concedes as much when it refers to "NJT's internal blaming of Rail Group for delays on the project." [Rail Group Op. Memo, p. 2]. In fact, nowhere does Rail Group deny that it was NJT's position <u>prior</u> to seeking the Policy extension that Rail Group committed errors and omissions in professional services.

   2. "Who was required to report the Counterclaims, and when were they required to be reported?"

These two inquiries are neither genuinely disputed nor are they relevant to resolving Lumbermens' motions. First, Lumbermens does not contend that it received notice from the wrong party. Second, the Policy unambiguously requires that claims be reported in writing "to the Company" during the Policy period or Automatic Extended Reporting Period ("AERP"). In any event, these are questions of Policy interpretation for the Court, not disputed questions of fact.

---

[3] Rail Group Op. Memo, pp. 9-10.

2

3. "Whether NJT had the authority to speak on behalf of Rail Group or any other insured under the OCIP in submitting the 'no known loss' letter in September 2002 in connection with the renewal of the Policy."

This is not relevant to deciding Lumbermens' motions. If Rail Group now claims that NJT acted improperly in procuring the Policy extension on Rail Group's behalf, Rail Group's recourse is against NJT, and not against Lumbermens. Further, the Policy named NJT as the Sole Agent to act on behalf of all insureds in procuring Policy endorsements, and the Policy extension was an endorsement to the Policy. The uncontested facts also clearly establish that NJT's broker, Marsh, knew that it was acting on behalf of all insureds when it gave Lumbermens false project status information and no-known loss misrepresentations that Marsh obtained from NJT.

4. "Whether the Counterclaims were made and reported within the Policy Period and/or the Extended Reporting Period ('ERP')."

There is no dispute that the counterclaims were made on March 3, 2003. There is no dispute that Rail Group failed to report the counterclaims to Lumbermens, but rather submitted them to Marsh. Rail Group offers no factual basis to establish an agency relationship between Lumbermens and Marsh. The only remaining issue is whether Rail Group's reporting a claim to its own broker constitutes notice to Lumbermens. This is a settled question of law. Reporting a claim to the insured's own broker does not constitute notice to the insurer, regardless of any informal arrangements between the insured and broker. *See* Lumbermens' Op. Memo pp. 8-9.

5. "What constitutes reasonable notice under the Policy, and whether a reasonable insured would have construed the Policy to require notice to be given by 12:01 a.m. on August 29, 2003."

Under New York law, "reasonable notice" is not a relevant inquiry in determining whether the insured reported a claim during the Policy period of a claims-made Policy. *See*

3

DM1\1155067.1

Lumbermens' Late Notice Memo, pp. 19-21. Rail Group here confuses the insured's duty to report a claim during the period of a claims made and reported policy—which is absolute—with the insured's duty to give timely notice of a claim or suit. The making and reporting of a claim during the policy period triggers the Policy. The "reasonableness" of Rail Group's delay in giving notice of a claim or suit is only material if the Court determines that such notice was late as a matter of law. In such a case, Rail Group bears the burden of proving that its delay in giving notice was "reasonable." New York law is clear that this inquiry is appropriate for Courts to resolve on motions for summary judgment. *See id.*

There can be no dispute that NJT's counterclaims must have been reported by 12:01 A.M. E.S.T. on August 29, 2003. Pursuant to the Policy extension endorsement, the Policy expired on "June 30, 2003 at 12:01 A.M. Standard Time at the address of the First NAMED INSURED" (*i.e.*, at NJT's New Jersey address, and therefore, Eastern Standard Time). The AERP was thereafter effective for sixty days. The Court can take judicial notice that a day has 24 hours and that sixty days equals sixty twenty-four hour periods. The sixty day period following 12:01 A.M. E.S.T. on June 30, 2003 ended at 12:01 A.M. E.S.T. on August 29, 2003. Rail Group provides no support for the fanciful notion that the length of the sixty-day period can be varied according to how a "reasonable insured would have construed the Policy."

> 6. "Whether Rail Group's reasons for not tendering the Counterclaims sooner were reasonable under the facts and circumstances of this case."

Lumbermens acknowledges that this is a fact question, but one ripe for adjudication by this Court. Lumbermens' motion has established that the six month delay between NJT's filing of its counterclaims and Rail Group's reporting of same constitutes late notice as a matter of law. Pursuant to New York law, it is now Rail Group's burden to show that the delay was reasonable. Rail Group failed to meet this burden in its opposition, and the Court

4

may therefore rule on summary judgment as a matter of law that Rail Group's notice was late. *See* Lumbermens' Late Notice Memo, pp. 19-21; Lumbermens' Op. Memo, p. 10.

> 7. "Whether Rail Group provided adequate and appropriate notice under the Policy."

Rail Group provides no legal support for the proposition that "adequate" and "appropriate" are standards of providing notice under a claims-made Policy. Rather, claims must be reported, and notice of claims and suits must be given timely, in accordance with the terms of the Policy. The Policy requires that claims must have been reported to Lumbermens during the Policy period or AERP. It is undisputed that Rail Group reported the counterclaims to Marsh—not to Lumbermens—and it is also undisputed that Marsh did not report the claims to Lumbermens until after the AERP expired.

Rail Group improperly labels as a fact question the legal question of whether Rail Group's notice of claims to its own broker was effective notice. As discussed above and in Lumbermens' affirmative and opposition memoranda, New York law is clear that notice to the broker is not notice to the carrier.

> 8. "Whether Lumbermens' conduct in the context of the OCIP demonstrates Lumbermens' acquiescence to have Marsh serve as an intermediary for receipt of notice."

In the face of settled law fatal to Rail Group's case, Rail Group desperately attempts to imply an agency relationship between Lumbermens and Marsh. The uncontested facts are conclusive that no such agency relationship existed, either explicitly or by acquiescence. Insureds typically buy policies through brokers, and not directly from insurers. Marsh's role as a broker was necessarily as an intermediary, as it was acting on behalf of NJT and the project contractors to procure insurance for the River LINE project. While Marsh

5

provided information to Lumbermens to procure the Policy for Marsh's clients, this did not make Marsh Lumbermens' agent for any purpose.

### C. Rail Group Cannot Refute that the Counterclaims Were Reported Outside the Policy Period and Were Untimely as a Matter of Law

Rail Group attempts to avoid summary judgment as to its late reporting of NJT's counterclaims by inventing two rules for reporting claims where a claims made and reported policy is part of an OCIP. First, Rail Group claims—without citing any authority—that there is a "mailbox rule" whereby claims are deemed reported when mailed. This argument fails because New York law is clear that a claim is deemed reported when received by the insurer, not when mailed by the insured. *See* Lumbermens' Op. Memo, pp. 6-7.

Second, Rail Group claims that it is entitled to report claims to its broker rather than to the insured, as required by the Policy.[4] The Policy unambiguously provides that claims are to be reported in writing to "the Company" during the Policy period or AERP. Nothing in the Policy permits the insured to report claims to its broker, as opposed to the insurer.

Rail Group attempts to sidestep this requirement by asserting the preposterous argument that the term, "the Company" is ambiguous and does not necessarily refer to Lumbermens.[5] Both the first page of the Policy form and the Declarations are headed with both "Kemper Environmental" and "Lumbermens Mutual Casualty Company." The preface to the insuring clause identifies the parties to the contract: "the Company agrees with the NAMED INSURED as follows." The Policy form concludes with, "the Company has caused this Policy to be signed by its President and Secretary," which appears above the signatures of Lumbermens'

---

[4] Most of the issues associated with the timeliness of Rail Group's purported notice of the counterclaims are addressed in Section I. B., *supra*.

[5] Rail Group previously conceded that the Policy is not ambiguous. Rail Group Memo, p. 13.

President and Secretary. There is no other possible meaning for the term "the Company" as it is used unambiguously throughout the Policy to refer to Lumbermens.

Finally, Rail Group imagines that Lumbermens acquiesced to an agency agreement with Marsh, whereby Lumbermens consented to have Marsh accept claims reports on behalf of Lumbermens. Rail Group relies solely on the OCIP Manual, to which Lumbermens was not a party and never agreed to be bound by. Even the manual itself does not state that claims reported to Marsh constitute notice to the insurer. Still, Rail Group claims that Lumbermens somehow knew that other claims had been reported to Marsh and never raised an objection to this practice. Rail Group can provide no factual support for this proposition because Lumbermens did not even know that the manual existed, much less how other claims were being reported under the OCIP.[6]

### D. Rail Group Failed to Refute that the Policy Extension Was Procured by a Material Misrepresentation

1. It is Indisputable that the Insureds Misrepresented That There Were No Claims or Circumstances that Could Lead to a Claim Under the Policy

Lumbermens set forth in detail in its affirmative motion how NJT, through Marsh, misrepresented that there were no claims or circumstances that could lead to a claim under the Policy. Before the Policy extension was issued, NJT documented its belief that Rail Group's errors and omissions in professional services were at least partly to blame for the project delays. Rail Group concedes as much by acknowledging "NJT's internal blaming of Rail Group for delays on the project" before NJT filed its counterclaims. *See* Rail Group Op. Memo, p. 2.

---

[6] Rail Group also fails to inform the Court that the OCIP manual's Claim Reporting Procedures required that Workers Compensation claims be reported <u>directly</u> to the carrier, Hartford Specialty Co. The OCIP manual is also silent on how to report professional liability claims, and merely directs the insureds to send notice of any suit immediately to Marsh's Claim Coordinator. *See* Ex. 8 to Apiscopa Aff., p. 35-36.

7

DM1\1155067.1

It is immaterial, as Rail Group frames the issue, whether NJT knew that it was going to assert any counterclaims in the litigation at the time it sought the Policy extension. It was important to Lumbermens' underwriters to know whether there were any claims or circumstances that <u>could lead to a claim.</u> NJT has repeatedly failed to disclose that it had been sued for over $100 million in claims that it denied due, in part, to professional services errors by Rail Group.

Rail Group mischaracterizes the testimony of Lumbermens' corporate representative, Karen Lubovinsky, by stating that she "was well aware that the Project had incurred significant delays . . . [and] it knew was likely to give rise to claims for cost overruns and offsets." First, Ms. Lubovinsky is not an underwriter and had no role in the Policy extension. Further, she flatly <u>denied</u> that she knew the reason the extension was being requested was because the job had been delayed. *See* Dep. Tr. of Karen Lubovinsky, pgs. 376-77, attached as Exhibit 22 to Van Tassel Aff. in support of Rail Group's Motion for Summary Judgment. She also denied that the request for an extension based on a delay necessarily meant that professional liability claims were likely. *See id.* All that Ms. Lubovinsky agreed to was that it is "fair to say it's common, when a job has been delayed, that claims can be pretty well anticipated." This was the very reason why, when Lumbermens' underwriter was told the project was delayed, he demanded disclosure of any circumstances that could give rise to a claim under the Policy before issuing the Policy extension.

Rail Group concedes that NJT was acting as the Sole Agent on behalf of all insureds in procuring the Policy extension endorsement for Rail Group. Rail Group is left to focus solely on the final no-known loss letter by NJT. Even if, *arguendo*, this letter was not intended to speak for Rail Group, NJT's and Marsh's prior representations to Lumbermens did

8

not include any such limitations. It is clear that, only in hindsight, Rail Group alleges that NJT was not acting on its behalf in procuring the Policy extension.

2. The Misrepresentation Was Material Because Lumbermens Relied on the Information in Issuing the Policy Extension

Rail Group's reliance on *First Financial* is misplaced. *First Financial* held that an insurer must establish "that it would not have issued the policy had it known the undisclosed facts." 193 F.3d 109, 119 (2d Cir. 1999). This is exactly what Lumbermens has established. When it underwrote the Policy extension, Lumbermens specifically asked about the project status and whether there claims or circumstances that could lead to a claim under the Policy. These were not part of a larger set of general or boilerplate inquires. <u>This was the only information that Lumbermens required</u>. It defies logic to think that the specific information requested by the underwriter when informed of a delay was not material to the insurer's issuance of an extension. Evidence of general or prior underwriting practices cannot be necessary to prove materiality where the only information required to underwrite the policy forms the basis of the misrepresentation.

3. The Severability Provision Does Not Vitiate Coverage For Rail Group

The Policy's severability provision does not preclude NJT's misrepresentations from being imputed to Rail Group. The severability clause plainly does not apply to duties assigned to the first Named Insured, NJT. These duties include acting as Sole Agent to procure endorsements, such as the endorsement extending the Policy Moreover, the Policy, as well as the warranty provisions in the letter Lumbermens issued with the Policy in lieu of a completed application, both made clear that coverage was provided in reliance upon the information provided to Lumbermens during the underwriting process, regardless of the source.

9

DM1\1155067.1

Rail Group claims that it is an innocent insured who cannot be held responsible for NJT's misrepresentation by incorrectly relying upon *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp.2d 455 (S.D.N.Y. 2005) ("*WorldCom*"). First, the severability clause in the *WorldCom* policy is different from NJT's Policy, and the corporation in *WorldCom* apparently did not have the same duty to act as the "Sole Agent" on behalf of the directors and officers, as NJT was required to do on behalf of Rail Group.

Next, *WorldCom* did not reach any conclusion about the efficacy of a severability clause. Rather, *WorldCom* decided whether an insurer had to pay defense costs in ongoing litigation where it claimed that the policy was void *ab initio* and rescinded. While the policy at issue had a limited severability clause, that clause was neither interpreted nor at issue. Only in a citation to another case did the *WorldCom* court note that a severability clause <u>could</u> entitle directors to coverage under a directors' and officers' policy even when the policy is properly rescinded against the corporation. *Id.* at 465. It was the <u>potential</u> for coverage that led the *WorldCom* court to rule that the insurer had to front the director's defense costs, which were subject to repayment by the director if the rescission became effective.

## II. <u>CONCLUSION</u>

Rail Group failed to raise a genuine issue of material fact in dispute in its Opposition. Lumbermens is therefore entitled to summary judgment in its favor.

10

DM1\1155067.1

Dated: New York, New York
       July 11, 2007

                        Respectfully Submitted:

By: /s/ Richard T. Apiscopa
    Thomas R. Newman (TN 8170)
    Robert P. Firriolo (RF 0030)
    Richard T. Apiscopa (RA 0990)
    DUANE MORRIS, LLP
    1540 Broadway
    New York, New York 10036
    (212) 692-1000

    Attorneys for Defendant Lumbermens Mutual
    Casualty Company

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Lumbermens' Reply Memorandum in Support of its Motions for Summary Judgment and in Response to Rail Group's Opposition Thereto," along with the accompanying Affidavit of Richard T. Apiscopa and exhibits, was served on the following persons on July 11, 2007 in the manner specified herein.

Electronically served through ECF:

Philip R. White
Howard M. Rosen
David A. Fultz
James D. O'Connor
Dawn C. Van Tassel
Thomas Steven Novak
Kirk O. Kolbo

Dated: July 11, 2007

/s/ Richard T. Apiscopa
Richard T. Apiscopa

DM1\1155067.1