UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Southern New Jersey Rail Group, LLC,<br>a Delaware limited liability corporation,<br><br>        Plaintiff,<br><br>and<br><br>New Jersey Transit Corporation,<br><br>        Plaintiff-Intervenor,<br><br>v.<br><br>Lumbermens Mutual Casualty Company,<br>d/b/a Kemper Insurance Companies,<br>an Illinois corporation,<br><br>        Defendant. | Case No. 06-cv-4946 (LAK) |

**OBJECTIONS TO REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE ANDREW J. PECK BY PLAINTIFF
SOUTHERN NEW JERSEY RAIL GROUP, LLC**

Plaintiff Southern New Jersey Rail Group, LLC (hereinafter "Rail Group"), pursuant to U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and Local Rule 72.1(c)(1), objects to the Report and Recommendation of Magistrate Judge Andrew J. Peck, filed in this matter on August 13, 2007, which recommended granting of the motion for summary judgment of defendant Lumbermens Mutual Casualty Company (hereinafter "Lumbermens") and dismissal of plaintiff's complaint. Rail Group's objections are:

1. The Magistrate Judge erred in concluding that there are no genuine issues of material fact in dispute and that Lumbermens is entitled to summary judgment in its favor as a matter of law.

2. The Magistrate Judge erred in concluding that Rail Group's report of claim to Lumbermens was untimely under the terms and provisions of the Lumbermens policy of professional liability insurance issued to Rail Group.

3. The Magistrate Judge erred in concluding that the Lumbermens policy contained clear and unambiguous instructions on how and where to report claims covered by the policy.

4. The Magistrate Judge erred in concluding that the course of conduct and dealing of Lumbermens and Marsh, and the circumstances in which the policy was issued pursuant to an "Owner Controlled Insurance Program" ("OCIP"), were insufficient to create a fact issue about whether Rail Group's notice addressed to "Lumbermens Mutual Casualty Company, Long Grove, Illinois c/o Marsh , Inc." constituted timely notice under the terms of the policy.

## I. INTRODUCTION

On cross-motions for summary judgment of Rail Group and Lumbermens, Magistrate Judge Peck granted Lumbermens' motion and declared that Lumbermens "need not provide coverage to Rail Group" under a professional liability policy of insurance it had issued. *See* Report and Recommendation (hereinafter "R & R") at 31. Specifically, the Magistrate Judge determined that the notice by Rail Group to Lumbermens was not timely under the terms of the policy with respect to reports of claims made during the "extended reporting period" of the policy. As a result of this conclusion, the Magistrate Judge recommended dismissal of Rail Group's complaint.

Plaintiff files these Objections because, at a minimum, genuine issues of disputed fact exist as to whether Rail Group provided timely notice to Lumbermens of the claims that had been made against Rail Group in an underlying litigation which form the basis of this coverage action. Accordingly, under the standard for granting summary judgment set forth at pages 9-12 of the Report and Recommendation, Lumbermens' motion should have been denied, and the question of the timeliness of Rail Group's notice to Lumbermens should be left for a finder of fact to decide after a trial on the merits.

Given the course of conduct between the parties and the unique circumstances of an "Owner Controlled Insurance Program" ("OCIP"), which the Lumbermens policy was issued pursuant, there is at least a genuine issue of fact about whether Rail Group's notice, which it tendered prior to expiration of the extended reporting period, was timely. The Rail Group notice was directed to "Lumbermens" and addressed to the broker under the OCIP, Marsh. Marsh received the notice on the last day of the extended reporting period, August 29, 2003, but did not communicate the notice to Lumbermens until the following week, after the Labor Day weekend. While plaintiff does not contend that there was an *express* grant of authority to Marsh from Lumbermens to accept for it receipt of notice of claim, there is evidence in the record from which a reasonable trier of fact could conclude that the course of conduct of the parties and in particular the custom and practice in the industry with respect to the administration and reporting of claims under an OCIP conferred Marsh with the real or apparent authority to accept Rail Group's notice of claim for Lumbermens. Accordingly, and for the reasons more fully set forth below, Rail Group objects to the conclusion of the Magistrate Judge (*see* R & R at 22-31) that Rail Group did not timely report claims to Lumbermens.

The record on which Rail Group relies for its objections include its memoranda of law and affidavits and exhibits accompanying both its motion for summary judgment (Docket Nos. 47-50, 68) and opposition to Lumbermens' motion for summary judgment (Docket Nos. 57-58); Rail Group's Consolidated Statement of Material Facts (Docket No. 51); Rail Group and New Jersey Transit Corporation's Consolidated Statement of Disputed Facts (Docket No. 65); and certain exhibits offered by Lumbermens (Docket No. 55).

## II. BACKGROUND

This case arises out of a policy of a claims made professional liability insurance issued by Lumbermens as part of an "Owner Controlled Insurance Program" ("OCIP") covering various insureds, including Rail Group, for liabilities arising out of work known as the River Line Project in New Jersey. *See* R & R at 3. The policy contains limits of $15 million and a $1 million self-retention. *Id.* The original policy period was from September 30, 1999 to September 30, 2002, but it was extended in September 2002 to June 30, 2003. *Id.* at 4. The policy also contained a 60-day "extended reporting period," which permitted the insured to report claims made during the policy period during the extended reporting period, which expired on August 29, 2003. *Id.* at 4, 26 & n.18. Because the policy was procured as part of an OCIP, it was obtained not by Rail Group, but by the owner of the project, New Jersey Transit Corp. (hereinafter "NJT"), which used the services of its broker, Marsh. *Id.* at 3. Hence, Rail Group was not involved in any of the communications about the procurement and extension of the policy, which was handled between NJT and Marsh and Marsh and Lumbermens.

The claims for which Rail Group seeks coverage in this case were first made in March 2003 when NJT served Rail Group with "counterclaims" in an action that Rail Group had commenced in July 2002 against NJT. *See* R & R at 7. While Lumbermens moved for summary judgment in part on the grounds that Rail Group did not "immediately" report the March 2003 claim to Lumbermens, the Magistrate Judge's Report and Recommendation did not address this issue, and the sole basis for its recommendation for summary judgment in Lumbermens' favor is the Magistrate Judge's determination that the claim was not reported timely because it was not received by Lumbermens until several days after the expiration of the extended reporting period. *See* R & R at 28-31, 29 n.20. Accordingly, while Rail Group addressed in detail in its summary judgment briefing to the Magistrate Judge why its report of claim was not untimely in light of the policy's provision for "immediate" reporting of claims, these contentions will not be addressed in this brief because the Magistrate Judge did not rule on them.[1]

As discussed more fully below, there is a constellation of facts and circumstances material to whether the report of claim was timely under the terms of the extended reporting provisions of the policy. Among these are (1) issuance of the policy as part of what Lumbermens *knew* to be an OCIP, a customary feature of which is centralized reporting of claims by insureds to the broker; (2) a course of conduct and dealings, consistent with customary OCIP practices, whereby Lumbermens was dealing directly with Marsh throughout the policy period; (3) lack of specificity in the policy itself about

---

[1] Similarly, the Magistrate Judge did not base his ruling on Lumbermens' contention that it was entitled to rescission or reformation of the policy on grounds of alleged misrepresentations by New Jersey Transit in the application for extension of the policy. *See* R & R at 4 n.3. Hence, Rail Group's objections do not address this issue.

5

how and where claims are to be reported; (4) and a statement by Lumbermens to Marsh that it would send a claim kit with specific reporting instructions to the insured, which there is no evidence that it did. These circumstances, when considered together, create at least a fact issue on whether Lumbermens is entitled to summary judgment.

### III. ARGUMENT

#### A.     Standard of Review

The Magistrate Judge's Report and Recommendation is a recommendation only to this Court, *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976), which must make a *de novo review* of those portions of the Report and Recommendation to which objection has been made. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Because the issue before the Court is whether Lumbermens is entitled to summary judgment, the burden of showing that no genuine issue of material fact exists is on Lumbermens. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219 (2d Cir. 1994). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rail Group, as the party opposing summary judgment, is entitled to have all reasonable inferences from the evidence drawn in its favor. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

## B. Genuine Issues of Material Fact Preclude Lumbermens' Entitlement to Summary Judgment

If the record in this case discloses the genuine existence of a material fact about whether Rail Group's notice to Lumbermens was timely in light of the provisions of the policy with respect to notice and the extended reporting period, then the Magistrate Judge's Report and Recommendation should be rejected, because it relied on no other basis for granting summary judgment to Lumbermens. For the reasons set forth in Rail Group's brief to the Magistrate Judge in opposition to Lumbermens' motion for summary judgment, the record contains more than enough evidence to create a triable issue of fact.

Four overall and related considerations support Rail Group's position that genuine issues of material fact should preclude granting summary judgment to Lumbermens. As discussed more fully below, these are (1) the circumstance that the policy was issued as part of an OCIP, which changes the traditional relationship between insurer, broker, and insured; (2) a long course of dealing and conduct between Lumbermens and Marsh over the course of the policy which supports at least a factual inference that in the circumstances of this case, Marsh was authorized to accept for Lumbermens notices of claim under the policy; (3) policy language on reporting of claims that lacks specific information on how or where to report claims; and (4) Lumbermens failure to send to Rail Group a claim kit with specific reporting instructions, despite the fact that Lumbermens told Marsh it would send such a kit to the insured.

The Lumbermens policy was issued as part of what it knew to be an OCIP applicable to this project. In opposing Lumbermens' motion for summary judgment, Rail Group relied in part upon the opinion of an expert in the administration and claims management under OCIP programs, Ron Rakich. Rakich's credentials, report, and

7

pertinent portions of his deposition were included in the record opposing Lumbermens' motion for summary judgment. *See* Expert Report of Ron Rakich ("Rakich report"), Affidavit of Kirk O. Kolbo submitted in opposition to Lumbermens' motion for Summary Judgment ("Kolbo Aff."), Ex. 7. In addition, there is evidence in the form of deposition testimony from a variety of sources, including Marsh and Lumbermens, about how OCIP insurance procurement and administration is different from the standard case, including in ways that are material to the reporting of claims.

The expert report of Ron Rakich explained in detail how an OCIP works, and how practices and policies issued under them are different from policies issued in a "conventional" manner. Rakich report at 2. In particular, OCIPs are "consolidated coverage programs covering many different insureds" on the same construction project, in contrast to policies issued under conventional programs, in which each participant, *e.g.*, owner, contractor, subcontractor, design professional, obtains its own insurance policy. *Id.* As the name makes clear, in an OCIP the owner has control over the purchase of insurance. *See* Design, Build, Operation, Maintenance ("DBOM") Contract for the project, Ex. 5 to Affidavit of Richard Apiscopa (herinafter "Apiscopa Aff."), filed June 15, 2007, accompanying Lumbermens' Motion for Summary Judgment, at § 8. In this case, the owner was NJT, and its chosen broker for procurement of policies under the OCIP was Marsh. *See* Deposition of Christopher Freund, Ex. 7 to Apiscopa Aff., at 148-49; Deposition of Kevin Houston, Ex. 11 to Apiscopa Aff., at 27. While Marsh representatives testified that they knew NJT received a copy of the policy, they did not know whether other insureds, including Rail Group, received a copy of the policy. *See id.* at 154, 168; Deposition of Kevin Houston, Ex. 11 to Apiscopa Aff., at 134.

In an OCIP, the insurer underwrites the project, whereas in conventional programs, multiple insurers separately underwrite individual risks. Rakich report at 2. One of the characteristic features of OCIPs is that the broker for the many insureds under the program customarily plays a central role for all insureds in the administration of the program, including in the reporting of claims. *Id.* at 3. With respect to claims reporting, the common practice is for liability claims to be reported to the broker. *Id.* This is exactly what the OCIP manual in place on this project provided: that all claims be reported to Marsh, which was the designated claim coordinator for the project. *Id. See also* Deposition of Leo Lippens, Van Tassel Ex. 5, at 26-28, 76-78; Deposition of Kevin Houston, Van Tassel Ex. 2, at 163-64; Affidavit of William Tewes at ¶9, accompanying Rail Group's Motion for Summary Judgment; OCIP Manual, Apiscopa Aff. Ex. 8, at 35.

Mr. Rakich's report states that he reviewed the documentary evidence in the case as well as deposition testimony. Among other things, he reviewed the Lumbermens policy, the OCIP manual, and the notices of claim and correspondence between Rail Group and Lumbermens. Rakich report at 6-7. He specifically addressed the question, among others, whether in his experience and knowledge of the custom and practices of the industry, Rail Group timely reported the claim at issue in this case. The Magistrate Judge addressed Mr. Rakich's opinions by stating that they did not address the issue of experience or industry custom in OCIP programs with respect to "*late* notice" under a claims made policy. R & R at 29 n.20. Rail Group respectfully disagrees that this is a fair characterization of Mr. Rakich's report because it makes very clear that he understood that the claim was reported to Marsh by August 29, 2003—"within the extended reporting period"—but that Lumbermens had denied the claim in part because it was not forwarded to Lumbermens until September 4, 2003. His conclusions were *both*

9

(1) that it was appropriate for Rail Group to have reported to Marsh, consistent with the OCIP manual and the "common practice" and "custom and practice in the construction insurance/OCIP environment" and (2) that Rail Group "provided *timely* notice of claim in an appropriate manner under an OCIP *prior to the expiration of the policy's extended reporting period*, consistent with custom and practice in the insurance industry and the OCIP environment in particular." *Id.* at 1-3.

Mr. Rakich was also asked in his deposition, pertinent portions of which were submitted as part of Rail Group's opposition to Lumbermens' summary judgment motion, about his opinion on the "timeliness" of reporting of the claim. His testimony reiterates and makes clear his opinion that reporting of the claim to Marsh within the extended reporting period was timely and consistent with custom and practice:

> Q. Can you summarized for me why you believe Rail Group provided timely notice?
>
> A. Well, the notice was provided, I think it's in the documents, a number of documents and testimony given so far, that the notice was provided to the broker prior to the expiration of the extended reporting period under the policy. The other statement in this opinion is that in the OCIP environment and as we've discussed, that it was reported to the broker which is a common practice in OCIPs.

*See* Deposition of Ron Rakich, Kolbo Aff. Ex. 8, p. 126.

Crediting Mr. Rakich's testimony on the subject of timeliness of reporting and his custom and experience with respect to reporting of claims should at the least create a fact issue concerning whether reporting in this case was timely. Moreover, on a number of points, his testimony is supported by other evidence in the record. Marsh witnesses testified about how OCIPs work, including how they "wrap" into one insurance program all the insurance needs for the construction project—as opposed to one insured—over a

10

period of time; which means that there may be dozens or even hundreds of entities insured under one OCIP. *See* Deposition of Chris Freund, Van Tassel Aff. Ex. 4, at 17-18; Deposition of Kevin Houston, Van Tassel Aff. Ex. 2, at 18-19, 51, 131. The testimony also supports the conclusion that it is common in OCIPs for the owner to put in place a centralized claims reporting procedure, in which the owner's broker functions as the claims coordinator or administrator between the insurers and the many insureds, and forwards claims to the appropriate insurer. *See* Deposition of Leo Lippens, Van Tassel Aff. Ex. 5, 75-76; Deposition of Chris Freund, Van Tassel Aff. Ex.4, at 64; Deposition testimony of Karen Lubovinsky, Kolbo Aff. Ex. 6, at 168. Indeed, this was the custom and practice on this project. *See* Deposition of Kevin Houston, Van Tassel Aff. Ex. 2, at 130. And Lumbermens knew when it issued the policy that it was part of an OCIP. *See* Deposition testimony of Brian Dooley, Kolbo Aff. Ex. 10, at 200.

Issuance of the policy through what Lumbermens knew to be an OCIP applicable to the project relates to the second consideration which supports the existence of at least a genuine fact issue for trial in this case. This is the course of conduct and dealings of Lumbermens and Marsh from prior to the inception of the policy up through its extension into 2003. Given Lumbermens' knowledge of the OCIP and evidence of a custom and practice in the management of OCIPs for the insured to give notice to a central intermediary—the broker—it is not surprising that Lumbermens made a practice of using Marsh as an intermediary to deal with the many insureds under the policy.

There is no evidence in the record of *any* direct communications between Lumbermens and Rail Group prior to Lumbermens' eventual acknowledgement of the claim that was tendered to it. When Lumbermens wanted information with respect to insureds—from the time of the initial underwriting process through correspondence about

11

the renewal in 2002 and up to the decision that Lumbermens would not renew or extend the policy after June 30, 2003—*all* the communications were between Lumbermens and Marsh, which in turn communicated with New Jersey Transit, not Rail Group. *See* Deposition of Leo Lippens, Kolbo Aff. Ex. 5, at pp. 26, 66-67; Affidavit of Richard T. Apiscopa, filed June 15, 2005, Exs. 26-28). Hence, the record discloses that

- The initial process for writing the policy involved communications between Marsh and Lumbermens. *See* Lumbermens Statement of Facts, P. 13, ¶45; Deposition of Brian Dooley, Ex. 19 to Apiscopa Aff., at 197.

- Lumbermens communicated the binder of coverage to Marsh. *See* Binder, Ex. 10 to Apiscopa Aff.

- Lumbermens' written acknowledgement of placement of the coverage was sent to Marsh only. *See* Correspondence dated March 14, 2000, Ex. 20 to Apiscopa Aff.

- Marsh obtained OCIP enrollment forms from covered contractors and sent them to Lumbermens. *See* Deposition of Kevin Houston, Ex. 11 to Apiscopa Aff., at 139.

- Marsh issued insurance certificates for the Lumbermens policy. *Id.*

- Communications about the extension and the "no known loss letter" that Marsh wanted in September 2002 were between Lumbermens and Marsh. *Id.* at 149-58.

- Communications by Lumbermens about a possible second extension of the policy in June 2003 were solely with Marsh. *See, e.g.,* E-mail correspondence between Brian Dooley and Christopher Freund, dated June 27, 2003, Ex. 15 to Apiscopa Aff.

- Lumbermens sent to Marsh but not to Rail Group a claim kit containing instructions how and where to report claims.

- The Lumbermens underwriter testified that *all* of his dealings on the policy were with Marsh, and not the insured. *See* Deposition of Brian Dooley, Ex. 19 to Apiscopa Aff., at 76-77.

Given this course of conduct over a period of years, in which Lumbermens had *no* dealings with Rail Group, and apparently never even sent it a copy of the policy, or claim kit, it is hardly surprising that Rail Group addressed its notice of claim to "Lumbermens …c/o Marsh, Inc," which the OCIP manual required it to do in any event. Through its course of conduct, there is at least a disputed issue of fact based on reasonable inferences that Lumbermens acquiesced in reporting of a claim to it through Marsh, and that Marsh had at least the apparent, if not actual authority, to receive a report of claim.

Finally, while the unique circumstance of an OCIP and Lumbermens' course of conduct should alone or together be sufficient to create a genuine fact issue, there is yet another layer of circumstance which should lead to the same conclusion. The language of the policy contains only limited information on *how* a claim is to be reported. The terms of the policy provide that notice shall be made to the "Company." *See* Policy at Section VII. A, attached as Exhibit 1 to Van Tassel Aff. While Rail Group does not contest the Magistrate Judge's conclusion that, in light of other provisions of the policy, the "Company" means Lumbermens, (*see* R & R at p. 28 n.19), this should not be the end of the inquiry on the sufficiency of the notice provision. The policy is in fact silent in a number of important respects. It states that notice shall be "given" by the insured to Lumbermens, but it does not state where that notice is to be given, and it does not state whether notice is effective only on receipt by Lumbermens, or instead, upon the insured's

act of tendering the notice. With respect to the first point, the Magistrate Judge relied on the facts that the declarations page of the policy contained an address for Lumbermens and that Lumbermens had sent to *Marsh* a claim kit that provided specific instructions—lacking in the policy itself—on how and where to report claims. *See* R & R at 5, 28. But on Lumbermens' motion for summary judgment, where all reasonable inferences are to be drawn against Lumbermens and in favor of Rail Group, these facts should not be sufficient for a court to conclude *as a matter of law* that the policy is clear and unambiguous about how to report claims, and specifically whether the manner in which Rail Group reported was timely. *See, e.g., Jeffrey v. Allcity Ins. Co.*, 26 A.D.3d 355, 356, 809 N.Y.S.2d 174 (2d Dept. 2006) (holding notice to broker effective notice to insurer and that insured was excused from strict compliance with notice requirement because of ambiguity in notice provision).

The Lumbermens' corporate address appears *once* at the top of the policy's declarations page, which does not contain *any* information or instructions on the reporting of claims. The policy itself contains no address or contact information with respect to reporting of claims. A reasonable inference from the fact that Lumbermens later sent to *Marsh* a "claim kit" with very specific claims reporting instructions is that Lumbermens itself understood that its policy was less than clear and definitive about how to report claims. But as discussed above, there is no evidence that Lumbermens sent the claim kit to its insured, Rail Group, *although it had informed Marsh that it would in fact do so*. This much is plain from an email transmission from the Lumbermens underwriter, Brian Dooley, to the Marsh broker handling the account, Kevin Houston. In confirming that coverage had been bound, Dooley also advised that "[c]laims kits and a service brochure will be sent to you and the insured." *See* Binder of Coverage letter, dated

14

September 30, 1999 ("Special Notes"), Ex. 10 to Apiscopa Aff; *See* Plaintiffs' Consolidated Statement of Disputed Facts, at 46, ¶59; Docket No. 75.

The undisputed testimony of Marsh's broker Kevin Houston is that he has no knowledge that the claim kit was forwarded to any of the design professionals, *i.e.*, Rail Group. *See* Deposition of Kevin Houston at pp.121, attached as Exhibit 11 to Kolbo Aff. Lumbermens has not alleged that it did send the claim kit on to Rail Group or any other insured, and there is no evidence that it did so. One reasonable inference which a trier of fact could draw from this evidence is that Marsh, through Houston, determined there was no need to send the claim kit on to insureds because Lumbermens' underwriter Brian Dooley had *already told him* that Lumbermens would undertake this task. But Lumbermens failure to do what it said it would do left Rail Group and other insureds with only the sketchy information on claims reporting that the policy alone contains.

Rail Group does not take issue with the Magistrate's statement of the law to the effect that "[w]here the terms of an agreement are clear and unambiguous, the Court will not look beyond the 'four corners' of the agreement." R & R at 14. But as explained above, the language of the policy is far from definitive about how or where to report claims. Indeed, the Magistrate Judge looked outside the "four corners" of the document insofar as the Report and Recommendation relies in part for the determination of untimely reporting and no coverage on the fact that "Lumbermens' Claim Kit and binder cover letter also 'contained explicit instructions to report professional liability claims directly to Lumbermens.'" *See* R & R at 28. The trouble with the Magistrate Judge's conclusion is that it views evidence concerning the claim kit in a light favorable to Lumbermens—with the inference that the sending of the kit to Marsh informed Rail Group about how to report claims. The same evidence, however, could in fact support a

contrary inference and one favorable to Rail Group—that by sending the claim kit to Marsh and also informing Marsh that Lumbermens would send the same kit to the insured, Lumbermens was acknowledging that the policy itself was inconclusive on the details of claims reporting. Because Rail Group is entitled to have all reasonable inferences available from the evidence drawn in its favor, the circumstances in which the claim kit was sent to Marsh, but not Rail Group, and Lumbermens' unfulfilled statement that it would do so, creates a fact issue sufficient to defeat Lumbermens' motion for summary judgment on the issue of timeliness of the notice.

A trier of fact might reach a different conclusion, but the facts and circumstances of this case, when considered in a light most favorable to Rail Group as the party opposing summary judgment, can support a conclusion that Rail Group gave a timely and proper report of the claims against it when it addressed its notices of claim to Lumbermens, "c/o Marsh," prior to the expiration of the extended reporting period.

## IV. CONCLUSION

For all the foregoing reasons, Rail Group respectfully submits that the Court should not adopt the Report and Recommendations of the Magistrate Judge.

Dated: August 30, 2007

PECKAR & ABRAMSON, P.C.

By: _____
Howard M. Rosen (HR-9443)
David Fultz (DF-7233)
546 Fifth Avenue
17th Floor
New York, New York 10036
Telephone: 212.382.0909
Facsimile: 212.382.3456


MASLON EDELMAN BORMAN & BRAND, LLP
James Duffy O'Connor (MN #80780)
Kirk O. Kolbo (MN #151129)
Dawn C. Van Tassel (MN #297525)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: 612.672.8378
Facsimile: 612.642.8378

**ATTORNEYS FOR PLAINTIFF
SOUTHERN NEW JERSEY RAIL GROUP, LLC**

541001